THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| SETH HARRIS, ACTING SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | ( ( ( **MEMORANDUM DECISION** |
| Plaintiff, | ( |
| v. | ( Case No. 2:13-CV-00253 DS |
| | ( District Judge David Sam |
| UNIVERSAL CONTRACTING, LLC; GROVE CREEK, LLC; CSG WORKFORCE PARTNERS, LLC; CSG EXTERIORS, LLC; CSG DRYWALL, LLC; CSG FRAMING, LLC; CSG INTERIORS, LLC; CSG PAINTING, LLC; CSG LANDSCAPING, LLC; CORY ATKINSON, individually; MOUNTAIN BUILDERS, INC.; RYAN D. PACE, individually; DECORATIVE ENTERPRISES, INC.; and TRACY BURNHAM, individually, | ( ( ( ( ( ( ( ( ( ( |
| Defendants. | ( |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Plaintiff Seth Harris, acting Secretary of Labor for the United States Department of Labor ("DOL"), seeks partial summary judgment against defendants Universal Contracting, LLC ("UC"); Grove Creek, LLC; CSG Workforce Partners, LLC; CSG Exteriors, LLC; CSG Drywall, LLC; CSG Framing, LLC; CSG Interiors, LLC; CSG Painting, LLC; CSG Landscaping, LLC (together as "CSG"); and Cory Atkinson ("Atkinson"), requesting that the Court find that the Class B members of UC and CSG are employees as defined in the Fair Labor Standards Act ("FLSA") and that defendants UC, CSG, Grove Creek and Atkinson are employers under the FLSA. *See* Docket #75. Plaintiff seeks this ruling in order to enjoin defendants to comply with

1

the FLSA provisions relating to record-keeping, minimum wage, and overtime and to provide compensation to both former and current employees resulting from violations of the FLSA.

Defendants also seek summary judgment claiming that the Class B members of Universal Contracting and CSG are not employees as defined by the FLSA and plaintiff therefore cannot prevail on his claim. *See* Docket #84.

## STANDARD OF REVIEW

"[T]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Furthermore, any factual inferences made on a motion for summary judgment are to be made in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In the present case, the facts are generally undisputed as evidenced by both parties' motions for summary judgment.

## BACKGROUND

Defendants provide labor staffing services to contractors in specific construction trades. CSG began doing business in Utah in 2008. In October 2011, Atkinson became the controlling owner and manager of CSG. Although these companies continue to be viable, they ceased doing business in December 2011. In January 2012, Atkinson, through Grove Creek, created UC using the same labor staffing model as CSG.

Under this model, UC provides specialized subcontractors with labor on a per job basis. The individuals who comprise UC's labor pool sign documents making them Class B members of UC's Limited Liability Company. This agreement states that these members are not employees of UC. Atkinson, through Grove Creek in its role as the administrative manager of UC, has complete control over the content of the agreement signed by potential members, and

they must sign the agreement in order to join the company. By signing these documents the laborers are awarded one membership unit of UC. Class B members are not treated as employees for tax or compensation purposes.

Atkinson, through Grove Creek, controls a minimum of fifty percent of UC's membership units regardless of how many Class B members join the company. Each of the Class B members is able to vote on company matters; however, no vote will be upheld unless it is supported by the votes of a body constituting a majority of ownership in the firm. Furthermore, no meeting can be held and no vote can be taken unless individuals representing a majority of ownership are present. Therefore, no vote can be taken and no member meeting can take place without Atkinson or his proxy present.

The DOL alleges that this company structure is merely a way to skirt the FLSA. It argues that the Class B members of UC and CSG should be classified as employees under the FLSA and that UC, CSG, Grove Creek, and Atkinson, should be classified as employers under the Act.

## ANALYSIS

The issues in these motions are (1) whether a member of an LLC can also be an "employee" of that LLC, and (2) whether UC, CSG, Grove Creek, and Atkinson are "employers" as defined by the FLSA.

### I. A Member of an LLC may also be an "Employee" of the LLC under the FLSA

The FLSA defines employee as "any individual employed by an employer." 29 U.S.C.A. § 203(e)(1). This definition is "completely circular and explains nothing." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992). However, courts have "often been asked to construe the meaning of 'employee' where the statute containing the term does not helpfully define it." *Id*. at 323. While no controlling court has addressed the direct question of whether LLC members

3

can also be employees under this vague definition in the FLSA, courts have established useful tests for applying this definition to other types of business entities. In light of these tests, this Court concludes that the Class B members of UC and CSG are employees as defined in the FLSA.

Courts that have interpreted other Federal statutes containing the FLSA's circular definition of "employee" hold that a person's title alone should not be dispositive in the analysis; rather, a number of factors should be considered in determining someone's status as an employee. *Clackamas Gastroenterology Associates, P. C. v. Wells*, 538 U.S. 440, 450-51 (2003). The parties in this suit disagree about the number and nature of the factors to be considered, as well as how the facts of this case should be analyzed under each factor.

Defendants rely on an eleven factor test set forth by the Tenth Circuit that includes many of the traditional common law factors for determining the nature of an employment relationship. The factors include: (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties. *Lambertsen v. Utah Department of Corrections*, 79 F.3d 1024, 1028 (10th Cir. 1996).

This test has been consistently applied by the Tenth Circuit to determine whether someone is *sufficiently connected* to an organization to be considered an employee as defined in

Federal statutes containing vague, circular definitions of "employee." *See id.*, *Xie v. University of Utah*, No. 2:04 CV 864 TC, 2006 WL 448857, *3, (D. Utah February 22, 2006), *affirmed*, 243 F. App'x 367 (10th 2007). However, this test does not answer the question presented in the present case. The controlling question in this case is not whether the Class B members are sufficiently connected to the organization to be employees; the question is whether members can simultaneously be members and employees of the LLC. To answer this question this Court relies on the factors set forth by the Supreme Court in *Clackamas Gastroenterology Associates v. Wells*.

In *Clackamas*, the Court was tasked with determining whether a director-shareholder in a professional corporation was also an employee as defined by the Americans with Disabilities Act ("ADA"). 538 U.S. at 442. While the Court was not directly interpreting the FLSA in *Clackamas*, the ADA's definition of employee is identical to the definition contained in the FLSA and many other Federal statutes. *Compare* 42 U.S.C. § 12111(4), with 29 U.S.C. § 203(e)(1).

The Court began its analysis in *Clackamas* by stating that "when Congress has used the term 'employee' without defining it, [the Court has] concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." 538 U.S. at 445 (*quoting Darden*, 503 U.S. at 322–23). The Court further explained that of all the factors to be considered "the common-law element of control is the principal guidepost that should be followed." *Clackamas*, 538 U.S. at 448. The Court reasoned that "[i]f the shareholder-directors operate independently and manage the business, they are proprietors and not employees; if they are subject to the firm's control, they are employees." *Id.* The Court then outlined six factors to be used to determine whether the director-shareholders manage the

business or are subject to the firm's control. The factors include: (1) "whether the organization can hire or fire the individual or set the rules and regulations of the individual's work," (2) "whether and, if so, to what extent the organization supervises the individual's work," (3) "whether the individual reports to someone higher in the organization," (4) "whether and, if so, to what extent the individual is able to influence the organization," (5) "whether the parties intended that the individual be an employee, as expressed in written agreements or contracts," (6) "whether the individual shares in the profits, losses, and liabilities of the organization." *Id.* at 449-50 (*quoting* EEOC Compliance Manual § 605:0009.10).

The Court relied on these six factors to decide whether a shareholder-director of a professional corporation can also be an employee of the corporation. This Court relies on these factors to decide whether a member of an LLC can also be an employee of that LLC. Following is an analysis of these factors as they apply to UC's current operations and CSG's operations prior to December 2011 (which were essentially identical to UC's current operations).

> a. *"Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work."* Id. *at 449-50.*

UC and CSG are able to hire and fire members. The managers appointed by the operating agreements are authorized "[t]o admit new Members to the Company and to develop and draft any documentation that will be signed by a newly admitted member." UC Op. Agmt., Art. 9.2P. This authorization gives the managers full authority to begin an employment relationship. Furthermore, the operating agreements give the managers power to "redeem" the Class B members' ownership interests for several reasons including: failing to provide services in line with the firms' quality standards, failing to abide by the firms' safety standards, failing a drug test, collecting fees independent of UC or CSG, failing to provide services for a specified period

6

of time, or doing anything detrimental to the companies. UC Op. Agmt., Art. 9.3, 10.7; Atkinson Tr. at 111:23-112:2.

    b.    *"Whether and, if so, to what extent the organization supervises the individual's work."* Clackamas*, 538 U.S. at 450.*

UC and CSG are able to supervise and control the work of the Class B members. In the operating agreements, the construction manager is granted authority to "make any substantive technical or administrative decisions relating to the manner in which any Class B Members perform construction services for the Company." UC Op. Agmt., Art., 9.3. Furthermore, "qualifiers" and "team leads" assign, inspect, and supervise the work of the Class B members. Atkinson Tr. At 248:1-250:7; Exhibit G – R. Alverez Aff. ¶¶ 14, 16; Exhibit H – C. Cedillo Aff. ¶¶ 13, 17; Exhibit I – A. Huerta Aff. ¶¶ 14, 17; Exhibit J – L. Jackson Aff. ¶¶ 14, 16, 17; Exhibit K – M. Catalan Aff. ¶¶ 16-17.

    c.    *"Whether the individual reports to someone higher in the organization."* Clackamas*, 538 U.S. at 450.*

While it is true that the Class B members have very flexible schedules and substantial autonomy, they still must be accountable to managers in the company in order to continue their employment relationship. While Class B members are engaged in providing services on behalf of UC and CSG they are subject to, and therefore constructively report to, the construction manager, the team leads, and the qualifiers. UC Op. Agmt., Art. 9.3; Atkinson Tr. At 248:1-250:7; R. Alverez Aff. ¶¶ 14, 16; C. Cedillo Aff. ¶¶ 13, 17; A. Huerta Aff. ¶¶ 14, 17; L. Jackson Aff. ¶¶ 14, 16, 17; M. Catalan Aff. ¶¶ 16-17. Additionally, since the managers created by the operating agreement have authority to terminate the employment relationship, the Class B

members also must be accountable to, or report to, these managers. UC Op. Agmt., Art. 9.3, 10.7; Atkinson Tr. at 111:23-112:2.

> d. *"Whether and, if so, to what extent the individual is able to influence the organization."* Clackamas*, 538 U.S. at 450.*

The Class B members have no real power to influence the organizations. While it is true that each Class B member has an ownership unit and can vote on that unit, no vote can be taken without a body representing a majority of ownership present. Since Atkinson controls at least fifty-percent of the companies, no vote can be taken unless he or his proxy is present. UC Op. Agmt., Art. 10.4. Furthermore, the operating agreements grant broad authority to the administrative and construction managers to determine everything from the content of the hiring paperwork, to the way in which the services will be provided by the Class B members. UC Op. Agmt., Arts. 7.3, 9.2P, 9.3. Additionally, various records indicate that the number of UC's Class B members is nearly 1,000. Atkinson Tr. at 231:16-18; Ex. 13 to Tr. Due to this large number of members, each individual member has very little influence over the organization.

> e. *"Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts."* Clackamas*, 538 U.S. at 450.*

It is clear from the language of the agreement signed by the prospective members at the outset of the employment relationship that UC and CSG did not intend the members to be employees. Ex. 17 to Atkinson Tr.

> f. *"Whether the individual shares in the profits, losses, and liabilities of the organization."* Clackamas*, 538 U.S. at 450.*

The Class B members share in the profits and losses of the organization in a limited way, and by definition they are shielded from the liabilities of the LLC. A percentage of the wages due

to each Class B member is deducted from their earnings and held in that member's capital account. These funds are used to pay administrative costs. Atkinson Aff. ¶ 11. Anything left over after the administrative costs are paid is returned to the member. *Id.* This is the extent of any profit sharing. The variance in administrative expenses caused by injuries or liability resulting from damages is the extent to which members share in the losses of the organization. *Id.*

The analysis of the six *Clackamas* factors above demonstrates that UC and CSG's Class B members are subject to the firms' control and are employees as defined by the FLSA.

## II. Universal Contracting, CSG, Grove Creek, and Atkinson are "Empoyers" under the FLSA

UC, CSG, Grove Creek, and Atkinson, are employers under the FLSA. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.A. § 203(d). While this definition is far from clear, the Supreme Court has concluded that the definition is expansive and includes individuals and organizations that have "substantial control of the terms and conditions of the work of the[] employees." *Falk v. Brennan*, 414 U.S. 190, 195 (1973).

The DOL, the regulatory body responsible for enforcing the FLSA, has enacted regulations outlining when multiple parties may be jointly liable under the FLSA due to the existence of a joint-employer relationship. *See* 29 C.F.R. § 791.2. Since congress has not directly addressed the issue of when a joint-employer relationship exists, and since the regulations enacted by the DOL are based on a permissible reading of the FLSA, this Court grants deference to the DOL's regulations. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). These regulations are helpful in determining which of the defendants in this case are employers of the Class B members. The regulation states:

> [A] joint employment relationship generally will be considered to exist in situations such as: [ . . . ] Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or [ . . . ] Where the employers [ . . . ] may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2. These regulations are broad and demonstrate intent to impose broad liability under the FLSA on both organizations and officers. According to these regulations, if one employer is acting in the interest of another, or if one employer is controlled by another, a joint-employer relationship exists, and "all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act." *Id.* Additionally, courts have held that a "corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007). Therefore, the level of control an organization or individual has over the employees is central in determining employer status.

Courts have used four factors to determine whether an individual or organization has sufficient control over an employee to be an employer as defined in the FLSA. The factors are "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (*quoting Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9 Cir.1983)). "No one of the four factors standing alone is dispositive.

Instead, the [. . .] test encompasses the totality of circumstances." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

   *a.* *Whether the alleged employer has power to hire and fire the employees*

UC, CSG, and their managers, of which Grove Creek is one, have the power to hire and fire employees. The managers are authorized "[t]o admit new Members to the Company and to develop and draft any documentation that will be signed by a newly admitted member." UC Op. Agmt., Art. 9.2P. Furthermore, the operating agreement's give the managers power to "redeem" the Class B members' ownership interests for several reasons including: failing to provide services in line with the firms' quality standards, failing to abide by the firms' safety standards, failing a drug test, collecting fees independent of UC or CSG, failing to provide services for a specified period of time, or doing anything detrimental to the companies. UC Op. Agmt., Art. 9.3, 10.7; Atkinson Tr. at 111:23-112:2.

   *b.* *Whether the alleged employer supervises and controls the employee's work schedules or conditions of employment*

The Class B members have substantial control over their own schedules; however, UC, CSG, and their managers supervise and control the Class B members' conditions of employment. As stated above the managers are authorized "to develop and draft any documentation that will be signed by a newly admitted member." UC Op. Agmt., Art. 9.2P. This documentation contains the terms and conditions of the employment relationship. Additionally, the construction manager is granted authority to "make any substantive technical or administrative decisions relating to the manner in which any Class B Members perform construction services for the Company." UC Op. Agmt., Art., 9.3. And "qualifiers" and "team leads" assign, inspect, and supervise the work of the Class B members. Atkinson Tr. At 248:1-250:7; Exhibit G – R. Alverez Aff. ¶¶ 14, 16; Exhibit

H – C. Cedillo Aff. ¶¶ 13, 17; Exhibit I – A. Huerta Aff. ¶¶ 14, 17; Exhibit J – L. Jackson Aff. ¶¶ 14, 16, 17; Exhibit K – M. Catalan Aff. ¶¶ 16-17.

   *c.*  *Whether the alleged employer determines the rate and method of payment*

The operating agreements grant the Class B members authority to negotiate the price that will be charged to the client for their services. UC Opp. Agrmt. Art. 5.3.C; Ponce Aff. ¶ 13; Jackson Aff. ¶ 13; Huerta Aff. ¶ 13; Cedillo Aff. ¶ 13; Catalan Aff. ¶ 13; Alverez Aff. ¶ 13. In that regard UC, CSG, and their managers do not determine the employees' rate of payment; however, the Class B members have little or no control over the amount of their earnings that is deducted to cover administrative costs or the amount of those administrative costs. In that way, the Class B members' rate and method of payment are out of their control.

   *d.*  *Whether the alleged employer maintains employment records*

Because UC and CSG do not view the members as employees, provide benefits, or pay hourly wages, they do not keep the type of records typically associated with the employee-employer relationship. However, they do keep records on who the current members are and the amount in each of the member's capital accounts. Atkinson Aff. ¶ 11.

After weighing the factors above, this Court concludes that UC and CSG are employers as defined by the FLSA. The Court also concludes that since Grove Creek is named as a manager of UC, and is thereby authorized by UC to exercise most of the control described above, it is also an employer. Furthermore, the Court finds that Atkinson is an employer. While he is not named as a manager in the operating agreements, Grove Creek is, and Atkinson is the sole manager of Grove Creek. Therefore, all of the operational control granted to Grove Creek is actually vested exclusively in Atkinson.

## CONCLUSION

While UC and CSG may have intended that the members of their labor force be called "members," these members are very much "subject to the firm's control," and as such are "employees" as defined by the FLSA. *Clackamas*, 538 U.S. at 448. Furthermore, UC, CSG, Grove Creek, and Atkinson all have sufficient control over the employees to be classified as "employers" as defined by the FLSA. Plaintiff's motion for summary judgment is granted, and defendant's motion is denied.

**SO ORDERED**

DATED this 12th day of June, 2014.

BY THE COURT:

_____
DAVID SAM
United States District Judge